GEER, Judge.
Plaintiff Rutherford Management Corp. ("RMC") filed a declaratory judgment action against the Town of Columbus ("the Town"), seeking an order establishing that a sign at its McDonald's Restaurant did not violate the Town's sign ordinance. The Town appeals from the trial court's order granting summary judgment in RMC's favor and directing the Town to permit RMC's sign. Based on our review of the ordinance, we hold that the trial court properly determined that RMC's sign, as currently operated, does not violate the sign ordinance. Because, however, the sign possesses features that could violate the ordinance if they were made operational, wealso hold that the trial court erred in ordering that the Town permit the sign without taking those features into account.
Facts
In December 2002, RMC contracted with a sign company to replace an existing sign at its McDonald's restaurant. The original 50-square-foot illuminated sign advertised special offers; the advertising copy had to be changed manually. The new 42-square-foot automated electronic sign was described by RMC in a permit application as follows:
The proposed sign is an automated electronic reader-board. It is illuminated with LEDs, the brightness of which is adjustable. The sign can be programmed to scroll messages and/or smoothly change messages automatically. It also has other graphics and display features which can be turned on or off as necessary, and which applicant does not intend to use. The sign has no moving parts.
RMC failed to obtain a permit from the Town prior to installing the sign. On 13 February 2003, the Town sent RMC a Notice of Violation based on RMC's failure to obtain a permit for the sign. In subsequent communications, the Town also stated that the sign violated the Town's sign ordinance because it used flashing and intermittent lights to display its messages.
RMC submitted a permit application for the sign on 12 March 2003. The Town denied the request for a permit on 14 March 2003 on a single ground: "[T]he total allowable sign area is one hundred four (104) square feet. The existing `identification sign' is two hundred six (206) square feet, which exceeds the maximum allowableunder the Town's Sign Ordinance. Therefore, no additional sign permits will be approved for this business."
After RMC expressed a desire to appeal the permit denial, the Town's attorney, by letter dated 5 May 2003, informed RMC that the Town's sign ordinance did not contain any provision for appeal. He explained that he had been authorized to proceed with a lawsuit, but suggested that if RMC agreed to turn off the sign, the Town would agree not to exercise its right to remove the sign and would waive any per diem fines while the action was pending. The Town's attorney also, for the first time, raised the possibility that a large "M" logo on the restaurant playground might violate the sign ordinance.
RMC refused to turn off the sign and three days later, filed a complaint seeking a declaratory judgment that the sign did not violate the Town's sign ordinance, a preliminary injunction prohibiting the Town from imposing any fines or penalties during the pendency of the litigation or taking action to remove or interfere with the sign, and an order directing the Town to issue a permit for the sign. The Town filed an answer and counterclaims, seeking a declaratory judgment that the electronic sign, the "M" logo, and various figures, streamers, and banners were in violation of the Town's sign ordinance; a permanent injunction requiring RMC to remove or turn off the electronic sign and to remove additional unpermitted signs; an award of civil penalties; and a permanent injunction prohibiting RMC from erecting any other signs without first obtaining a permit. Before RMC replied to these counterclaims, the Town filed a motion for partial summary judgment. The motion did not specify the claims to which it related. After a hearing on the motion, the trial court, on 30 June 2003, granted summary judgment in favor of RMC, concluding: "Under the facts of this case the Court concludes that the sign in question comes within exemption IV(h) to the sign ordinance and therefore the sign is entitled to be permitted under the ordinance passed by the Defendant Town." The court also ordered the Town "to permit the sign in question owned by the Plaintiff." The Town filed notice of appeal from that order on 25 July 2003.
Interlocutory Nature of the Appeal
We first observe that this appeal is interlocutory. An order is interlocutory if it does not dispose fully of a case, but rather requires further action by the trial court in order to finally determine the rights of all the parties involved in the controversy. Veazey v. City of Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Because the trial court decided only whether "the sign in question" - the electronic reader board that was the subject of RMC's complaint - violated the Town's sign ordinance, the order did not dispose of the counterclaims asserted by the Town regarding the playground "M" sign and the figures, banners, and streamers. As a result, the trial court's order granting summary judgment to RMC is interlocutory. Currin & Currin Constr., Inc. v. Lingerfelt, 158 N.C. App. 711, 713, 582 S.E.2d 321, 323 (2003) (order granting defendants' motion for summaryjudgment, but not resolving defendants' counterclaims, was interlocutory).
An interlocutory appeal is permissible only if (1) the order is final as to some claims or parties and the trial court has, pursuant to Rule 54(b) of the Rules of Civil Procedure, certified that there is no just reason to delay the appeal, or (2) the order deprives the appellant of a substantial right that would be lost in the absence of an immediate appeal. Id. In this case, the trial court did not include a Rule 54(b) certification in its order. Plaintiff's appeal is, therefore, proper only if the "substantial right" exception applies.
Rule 28(b)(4) of the Rules of Appellate Procedure requires appellants to include in their briefs "[a] statement of the grounds for appellate review," including "sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." N.C.R. App. P. 28(b)(4). The Town's brief, however, fails to include a statement of grounds for appellate review or any other explanation as to why an interlocutory appeal should be allowed and we have been unable to identify any pertinent substantial right. Nonetheless, in order to promote judicial economy, we exercise our discretion to treat the Town's appeal as a petition for writ of certiorari under Rule 21(a)(1) and allow it. See Kimzay Winston-Salem, Inc. v. Jester, 103 N.C. App. 77, 79, 404 S.E.2d 176, 177, disc. review denied, 329 N.C. 497, 407 S.E.2d 534 (1991).
I
The Town first argues "that the trial court erred in entering Summary Judgment in favor of the non moving [sic] party, i.e., Plaintiff, based upon a Motion for Summary Judgment by Defendant." Our Rules of Civil Procedure provide, however, that "[s]ummary judgment, when appropriate, may be rendered against the moving party." N.C.R. Civ. P. 56(c). See also Greenway v. N.C. Farm Bureau Mut. Ins. Co., 35 N.C. App. 308, 314, 241 S.E.2d 339, 343 (1978) ("Rule 56(c) does not require that a party move for summary judgment in order to be entitled to it. . . . [W]hen appropriate, summary judgment may be rendered against the moving party."). This argument is without merit.
The Town also objects that the trial court's summary judgment order is flawed because it does not address the "M" logo on the McDonald's playground.[1] It is well-established that "[s]ummary judgment may be entered upon less than the entire case." High Point Bank & Trust Co. v. Morgan-Schultheiss, Inc., 33 N.C. App. 406, 431, 235 S.E.2d 693, 707 (1977), cert. denied sub nom Poston v. Morgan-Schultheiss, Inc., 439 U.S. 958, 58 L. Ed. 2d 350, 99 S. Ct. 360 (1978). The trial court was not, therefore, required to address the "M" logo in its order, particularly since the Town's motion, identified as a "motion for partial summary judgment," did not specify that the "M" logo was encompassed by that motion. SeeN.C.R. Civ. P. 7(b)(1) ("An application to the court for an order shall be by motion which . . . shall state with particularity the grounds therefor, and shall set forth the relief or order sought."). In addition, the Town does not include any argument in its brief as to why the evidence before the trial court was sufficient to warrant summary judgment in its favor with respect to the "M" logo.[2] We, therefore, decline to address the "M" logo on appeal in the first instance.
II
The Town's primary contention on appeal is that the trial court erred in construing the Town's sign ordinance as allowing RMC's electronic sign. The parties do not dispute the material facts, but rather debate the proper construction of the Town's sign ordinance. Questions involving the proper interpretation of a sign ordinance are questions of law that we review de novo. Morris Communications Corp. v. Bd. of Adjustment for the City of Gastonia, 159 N.C. App. 598, 600, 583 S.E.2d 419, 421, appeal dismissed, 357 N.C. 658, 590 S.E.2d 269 (2003).
Municipal ordinances are construed according to the same rules as statutes enacted by the legislature. Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of the Town of Nags Head, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). See also Cogdell v. Taylor, 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965) ("The rules applicable to theconstruction of statutes are equally applicable to the construction of municipal ordinances."). Judicial construction is, however, required only if the language of the ordinance is unclear. Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment, 354 N.C. 298, 304, 554 S.E.2d 634, 638 (2001). If the words of an ordinance are plain and unambiguous, then "the court need look no further." Id. We must keep in mind that "[z]oning ordinances derogate common law property rights and must be strictly construed in favor of the free use of property." Lambeth v. Town of Kure Beach, 157 N.C. App. 349, 354, 578 S.E.2d 688, 691 (2003).
While the Town relied upon various provisions of its sign ordinance in its arguments to the trial court, it points on appeal to only two provisions - Sections XIII(b) and XV(b) - as prohibiting RMC's sign.[3] Section XIII ("Prohibited Signs") provides: "Unless otherwise permitted, the following signs are prohibited: . . . (b) No sign or device may be permitted which contains or is illuminated by any flashing, intermittent, or moving light or lights." Section XV ("Illumination") provides: "Where illuminated signs are permitted, they shall conform to the following requirements: . . . (b) Signs which contain, include, or are lighted by any flashing, intermittent or moving lights are prohibited, except those giving public information such as time, temperature and date." The Town has not contended on appeal that an electronic sign with a constantly illuminated and unchanging LED display would violate Sections XIII and XV's prohibition of signs illuminated by flashing, intermittent, or moving lights. Instead, the Town objects to the sign because it "displays constantly scrolling or otherwise changing text messages by means of light emitting diodes, or LEDs." The record contains no indication that the sign, as currently operated, flashes, is intermittent, or has moving lights other than when scrolling or otherwise changing its message. The question is thus whether the sign contains prohibited "flashing, intermittent or moving light[s]" by virtue of the changing message.
Section IV of the sign ordinance provides: "The following types of signs are exempted from the applications of the regulations herein: . . . (h) The act of changing advertising copy or messages on any sign designed for the use of replaceable copy such as a ready board or product price sign or on a sign having its own changing copy capacity such as a time-and-temperature sign." Pursuant to this exemption, the mere fact that the LEDs necessarily flash or move at the moment the sign is changing its advertising copy cannot be considered a violation of the other provisions of the ordinance.
The Town contends that the exemption in Section IV(h) permits only signs displaying time and temperature or other public information. This contention is contrary to the plain language of the ordinance, which states that the exemption applies to signs "such as a time-and-temperature sign." (Emphasis added.) Use ofthe phrase "such as" indicates an intent to provide an example of a sign with its own changing copy capacity. "Such as" cannot be read to limit the scope of the exemption only to the following items. See N.C. Turnpike Auth. v. Pine Island, Inc., 265 N.C. 109, 120, 143 S.E.2d 319, 327 (1965) ("`The statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.'" (quoting People v. Western Air Lines, Inc., 42 Cal. 2d 621, 639, 268 P.2d 723, 733, appeal dismissed per curiam sub nom Western Air Lines, Inc. v. California, 348 U.S. 859, 99 L. Ed. 677, 75 S. Ct. 87 (1954))).
Moreover, Section XV of the ordinance already exempts signs "giving public information such as time, temperature and date" from the general prohibition on signs with moving, flashing, or intermittent lights. The Town's construction would render Section IV(h) superfluous. "[A] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage." Jolly v. Wright, 300 N.C. 83, 86, 265 S.E.2d 135, 139 (1980), overruled on other grounds by McBride v. McBride, 334 N.C. 124, 431 S.E.2d 14 (1993).
The Town next argues that the IV(h) exemption addresses only "the act of changing advertising copy or messages" (emphasis original) on a sign rather than the sign itself. Although we agree, we do not see how this limitation advances the Town's position. The provision's focus on "the act" means that the sign itself is not exempted from the sign ordinance, but rather"changing advertising copy or messages" are deemed not to violate other provisions of the sign ordinance. While the Town urges that "the act" refers to "the mere act of daily changing [of] specials offered," this proposed limitation cannot be reconciled with the exemption's example of a time and temperature sign, which necessarily changes more frequently than daily. The Town provides no justification for insertion of a time limitation into the otherwise plain language of the ordinance.
Since the ordinance's language is plain, we need not - indeed, we may not - proceed further. Westminster Homes, 354 N.C. at 304, 554 S.E.2d at 638 (where words used in the ordinance are plain and unambiguous, no statutory construction is necessary in order to ascertain the meaning of the ordinance). As this Court has stressed, "it is this Court's duty to apply the ordinance irrespective of any opinion we may have as to its wisdom, for it is our duty to `declare what the law is . . . [not] what the law ought to be.'" Town of Pine Knoll Shores v. Evans, 104 N.C. App. 79, 83, 407 S.E.2d 895, 897 (1991) (quoting Vinson v. Chappell, 3 N.C. App. 348, 350, 164 S.E.2d 631, 633 (1968), aff'd, 275 N.C. 234, 166 S.E.2d 686 (1969)), modified on other grounds, 331 N.C. 361, 416 S.E.2d 4 (1992).
III
The Town also appeals the trial court's order that it issue a permit for the sign. We agree that an unlimited permit is not warranted in light of the evidence in the record. The evidence suggests that certain types of operation of the sign may not fall within the scope of Section IV(h). If RMC's sign scrolls or flashes the same message continuously, that cannot be considered an "act of changing advertising copy or messages." In addition, RMC's permit application acknowledged that the sign "also has other graphics and display features that can be turned on or off as necessary . . . ." RMC's counsel admitted to the Town that "some of the sign's features may constitute `flashing' within the meaning of the ordinance," but offered to turn off the "flashing" features and set the sign only "to display scrolling or otherwise smoothly-changing messages." The permit application stated that RMC did not intend to use the other features.
Since the sign has various features, some of which would cause it to violate the ordinance and some of which would not, the trial court should not have directed the Town to issue a permit for the sign without any limitations. Such an order would allow RMC to activate the prohibited features - such as a constantly flashing or scrolling message - at some later time. In any event, we are unable to determine from the record all of the features of the sign and which of those features would be impermissible under the ordinance. We must, therefore, remand the matter to the trial court for determination of the proper scope of the permit.
In sum, to the extent that the sign's electronic messages simply change, we affirm the trial court's conclusion that the sign does not violate the ordinance. We reverse the trial court's order to the extent it directs the Town to issue a permit for the signwithout any limitations and remand this matter to allow the trial court to decide in the first instance which features should be precluded as a condition of RMC's obtaining a permit.
Affirmed in part, reversed in part, and remanded.
Judges HUDSON and THORNBURG concur.
Report per Rule 30(e).
Judge THORNBURG concurred prior to 31 December 2004.

The Town does not mention its counterclaims relating to streamers, banners, and pennants or its request for an injunction prohibiting RMC from building any future signs without first obtaining a permit.

The Town points to an admission of RMC in its reply to the Town's counterclaims, but acknowledges that this reply was not filed until after the trial court entered its summary judgment order.

RMC has explained in its brief on appeal why its sign does comply with the ordinance's size limitations. Because the Town has not argued on appeal that those provisions were violated, we do not address them.